Lambert Y. GOBBER, III, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 91–802.

United States Court of Veterans Appeals.

Submitted Feb. 4, 1992.

Decided May 27, 1992.

Lambert Y. Gobber, III, pro se.

James A. Endicott, Jr., Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Arthur L. Kraut, Washington, D.C., were on the brief, for appellee.

Before KRAMER, HOLDAWAY and IVERS, Associate Judges.

HOLDAWAY, Associate Judge:

Appellant seeks reversal of a March 28, 1991, decision of the Board of Veterans' Appeals (BVA or Board) which denied entitlement to service connection for a hearing loss. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a) (formerly § 4052(a)).

Appellant served in the Navy between 1954 and 1977. He served near jets on the flight line of a carrier and at Naval air stations for much of this period. He filed a claim with the Veterans' Administration (now Department of Veterans Affairs) (VA) in 1977 for, inter alia, bilateral high frequency hearing loss (HFHL). A VA examination was performed. Only air conduction tests were performed. On October 20, 1977, the VA Regional Office (VARO) denied service connection because "there [was] no evidence of high frequency hearing loss as claimed by the veteran." This rating was confirmed by the VARO on June 15, 1978.

In 1983, appellant reopened his claim. Another VA audiogram was done (both air conduction and bone conduction) which did show some HFHL. The VARO denied service connection on February 4, 1983, because, although HFHL was shown on the examination, it was not shown until "over 5 years after discharge, [and, therefore, it was] insufficient to establish [service connection] for hearing loss." The 1983 VARO decision was not appealed.

On November 20, 1989, appellant attempted to reopen his claim by submitting a copy of an audiogram which according to appellant "was conducted in 1976 and was used to reassign [him] from working on jet engines to working in supply." The audiogram is undated, unsigned by an operator, and does not show the name of the person tested. Appellant stated that it was among items he copied from his file when leaving service.

On March 13, 1990, the VARO refused to reopen the claim stating that the audiogram was not material because it had no date or name to show who gave the test. Appellant filed a Notice of Disagreement on April 13, 1990. On his VA Form 1-9, submitted August 2, 1990, he stated:

> Starting in 1973 or 1974, it was a practice by the U.S. Navy to administer a hearing test every six (6) months to personnel exposed to high levels of noise produced by jet aircraft. I was included in this group, working on the line 8 hours per day on the deck of an aircraft carrier and on shore duty at Lamore Naval Air Station. Although the audiogram [submitted] November 11, 1989, does not show name or date, it was in fact, a part of my service medical record and was administered by the U.S. Navy during my tour of duty. I photocopied it, as well as other documents, before discharge from active duty.

On March 28, 1991, the BVA affirmed the denial of service connection stating that the audiogram "[was] not determinative of the issue in this case." *Lambert Y. Gobber, III*, BVA 91-10233, at 4 (Mar. 28, 1991). Appellant filed a timely appeal to this Court.

■ "Evidence is considered new when it is not merely cumulative of other evidence on the record, and is considered material when it is relevant and probative of the issue at hand and there is a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Robie v. Derwinski*, 1 Vet.App. 612, 614 (1991) (citing *Colvin v. Derwinski*, 1 Vet.App. 171, 173–174 (1991)). *See also*

*Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991) (two-step analysis required when a veteran seeks to reopen a claim based upon new evidence). The audiogram submitted by appellant on November 20, 1989, by itself, simply is not probative of the issue of service connection because it lacks authentication. It may or may not pertain to the appellant. Nor, without a date, is it in any way relevant to this claim. However, the evidence, when combined with appellant's statement that it came from his service medical records and was made in 1976, is sufficient "new and material" evidence under 38 U.S.C. § 5108 (formerly § 3008) to warrant reopening of the claim. *See Pruitt v. Derwinski,* 2 Vet.App. 83, 84 (1992) ("The Secretary of Veterans Affairs (Secretary) cannot ignore appellant's testimony simply because appellant is an interested party."). This, of course, presumes that the HFHL shown by the audiogram was a sufficient loss to justify a rating disability. The BVA did not opine as to whether the loss was ratable nor can we from the record on appeal.

"New and material" evidence is, by its nature, well-grounded, i.e., evidence that, if believed, would provide a "reasonable possibility" that the outcome would be changed. *Colvin,* 1 Vet.App. at 174. Under VA's "duty to assist," the BVA, therefore, should have had appellant's records searched to see if the audiogram and the claimant's statement pertaining thereto could be corroborated (by, for example, ensuring that the medical records before them were complete, or determining whether the audiogram existed in other records such as relevant personnel records, or if there were evaluations in such records giving a reason for the alleged transfer off the flight line). *See* 38 U.S.C. § 5107 (formerly § 3007) ("duty to assist"); *White v. Derwinski,* 1 Vet.App. 519, 521 (1991) (where claimant alleges facts that, *if believed,* might result in a compensable claim, he is entitled to have the Secretary assist him in obtaining his requested evidence). *See also Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990) ("A well-grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation.").

The duty is heightened when the putative records are in the control of a governmental agency and where, as here, the reliability and relevance of the records are dependent upon their source. Because there were no identifying marks or date on the audiogram, only the presence of the records in appellant's service medical records or personnel file would provide the necessary relevance and materiality.

We note that the VA's "duty to assist" does not derogate from a claimant's burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that a claim is well-grounded. *See* 38 U.S.C. § 5107. The VA's "duty" is just what it states, a duty to *assist,* not a duty to prove a claim with the claimant only in a passive role. *See Wood v. Derwinski,* 1 Vet.App. 190, 193 (1991). Nor is the VA required to search for evidence which, even if obtained, would make no difference in the result. *See Colvin,* 1 Vet.App. at 174. In short, the "duty to assist" is not a license for a "fishing expedition" to determine if there *might* be some *unspecified* information which could possibly support a claim. In connection with the search for documents, this duty is limited to specifically identified documents that by their description *would be* facially relevant and material to the claim.

Accordingly, the Secretary's motion for summary affirmance is DENIED and the case is REMANDED to the Board with directions to assist appellant in locating the records he claims are relevant and material to his claim.